PER CURIAM.
We have for review a referee’s report on complaint of The Florida Bar. We have *462 jurisdiction. Art. V, § 15, Fla. Const. We approve the report.
In his lengthy and detailed report, the referee made the following findings of fact as to the allegations made in the Bar’s complaint:
AS TO COUNT I
[[Image here]]
2. On December 16, 1982, respondent was appointed by the Circuit Court, Seventeenth Judicial Circuit, Broward County, Florida, in case number 82-3869, personal representative of the estate of John Francis Holbrook, deceased.
[[Image here]]
9. On May 2, 1985, the probate court issued an order discharging respondent as personal representative and releasing the surety on her bond on the basis of respondent’s final accounting and the report of distribution filed by respondent which report was predicated upon such final accounting.
10. In truth and in fact, the final accounting filed by respondent does not constitute a true return of all monies received and paid out by respondent as personal representative during the period embraced by the accounting, viz., July 19, 1982, through January 16, 1985.
11. Estate check number 205 represented by respondent as “void” as recited in paragraph 7 of the complaint in this cause, was in fact, issued by respondent on or about July 18, 1984, in the sum of $3,500.00 payable to “Barbara Wolf Trust”....
12. On or about July 18,1984, respondent issued her client trust account check number 809 in the sum of $3,500.00 payable to herself which check respondent deposited to her operating account the same date.
13. Respondent thereafter expended the $3,500.00 from her operating account applying the same to purposes having no connection or nexus to decedent’s estate.
14. Estate check number 206 represented by respondent as “void” as recited in paragraph 7 of the complaint in this cause, was in fact, issued by respondent on or about July 10, 1984, in the sum of $10,000.00 payable to “Barbara Wolf Trust”....
15. On or about July 10,1984, respondent issued her client trust account check number 806 in the sum of $9,000.00 payable to herself and deposited the same on the same date to her operating account.
16. Respondent thereafter expended the $9,000.00 from her operating account and the balance of estate fund in the sum of $1,000.00 remaining in her client trust account to purposes having no connection or nexus to decedent’s estate.
17. On or about October 22, 1984, respondent deposited to her client trust account the sum of $400.00 representing an I.R.S. refund to decedent’s estate.
18. Respondent thereafter expended the $400.00 from her client account to purposes having no connection or nexus to decedent’s estate.
[[Image here]]
AS TO COUNT II
20. On or about February 13, 1984, respondent received and deposited to her client trust account the sum of $5,000.00 which sum was entrusted to respondent for the specific purpose of application to the purchase of certain property, the transaction designated by respondent as “Nassr/Klingerman”.
21. By June 30, 1984, respondent had issued checks from her client trust account, the total of which exceeded her client trust account balance to the extent of $918.22, with no expenditure or disbursement having any connection or nexus to the Nassr/Klingerman transaction.
[[Image here]]
24. During July, 1984, respondent disbursed a total of $71,199.29 on account for the Nassr/Klingerman transaction, or, $1,701.63 more than the amount held by respondent in her client trust account for the specific purpose of application to the Nassr/Klingerman transaction.
AS TO COUNT III
25. On November 6, 1984, respondent received and deposited to her client trust *463 account the sum of $80,426.82 for the specific purpose of application to a transaction designated by respondent as [“SWKO”].
[[Image here]]
27. On November 29, 1984, when check number 1001 in the sum of $48,-228.61 was presented for payment, it was dishonored due to insufficient funds in respondent’s client trust account which, on that date, had a balance of $41,780.14, or, a shortage in respondent’s client trust account liability in the SWKO transaction to the extent of $6,448.47.
AS TO COUNT IV
[[Image here]]
29. During the period from October 1, 1984, through October 15, 1984, in addition to the balance of $1,576.52, as aforesaid, respondent received from certain land trusts sums totaling $24,736.01, which sums she deposited to her client trust account.
30. On October 15, 1984, respondent issued her client trust account check 930 in the sum of $7,151.54 payable to the John Watkins Trust identifying such payment as pertaining to “Settlement of Claypool,” a transaction having no connection or nexus to the land trusts underlying the $24,736.01 receipts in paragraph 29 of these findings.
AS TO COUNT V
[[Image here]]
33. On August 27, 1984, respondent withdrew $3,300.00 from the Nemetz trust account and deposited the same to her non-interest bearing client trust account, which, prior to such deposit, had a balance in the sum of $938.42.
34. Respondent thereafter issued [a number of checks totalling $3,490.00] from her client trust account....
35. None of the [issued checks] had any connection or nexus to the Nemetz transaction.
Based on these findings, the referee determined that the allegations in Count IV were not sufficiently proved and recommended that Wolf be found not guilty on that count. The referee further determined that allegations in other counts were sufficiently proved and recommended that Wolf be found guilty of violating the following provisions of the Rules of Discipline under the Integration Rule of The Florida Bar:[1] Rule 11.02(3)(a) (commission of an act contrary to honesty, justice or good morals), and Rule 11.02(4) (money entrusted for a particular purpose must be used for that purpose only). The referee recommended that Wolf be found guilty of violating the following provisions of the Code of Professional Responsibility: Disciplinary Rule 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), Disciplinary Rule 7-102(A)(3) (not conceal or knowingly fail to disclose that which by law she is required to reveal), and Disciplinary Rule 7-102(A)(5) (not knowingly make a false statement of law or fact).
Prior to recommending discipline, the referee noted that Wolf had been publicly reprimanded and placed on three years’ probation by this Court in 1986 for violating Florida’s security laws concerning the same trusts in issue here. The Florida Bar v. Wolf, 492 So.2d 1329 (Fla.1986). The referee then made the following findings as to aggravating and mitigating circumstances:
The following aggravating circumstances have been considered by the referee:
a. A pattern of misconduct in the handling of clients’ trust funds. By her own testimony she paid no attention to the balances of her trust accounts even after numerous checks were returned unpaid for insufficient funds.
b. Numerous offenses as indicated by the several counts of which she has been proven guilty.
*464 c.Lack of candor in her testimony as to the reasons for her improper use of trust funds.
The following mitigating circumstances have been considered by the referee:
a. Respondent had no disciplinary record prior to the [1986] consent judgment which involved the same trust accounts as are involved in this proceeding.
b. At the time of the misuse of trust funds charged herein respondent expected to replace the funds prior to time for accounting to the owners of the funds which was a reasonable expectation in view of her assets and income.
c. Full restitution of the misused funds was made prior to involvement of The Florida Bar from other funds available to respondent_ The referee is of the opinion that the owners of the' trust funds misused by respondent suffered no substantial financial loss by reason of such misuse of the trust funds, except for the failure of respondent to repay the interest which the funds she improperly withdrew from the trust account for Joseph Nemetz would have earned prior to the time the funds were replaced....
d. Respondent fully cooperated with the Bar auditor in the investigation of the charges against her.
e. Due to marital problems arising out of a disintegrating marriage to a paranoid, cocaine addict, and financial pressures of the failing land trusts respondent suffered diminished capacity at the time of the acts complained of....
f. The character evidence presented at trial indicates that respondent’s clients and friends have full confidence in her despite the public reprimand in [1986] and knowledge of the charges asserted against her in this proceeding.
g. The fact that the offense charged in the Bar’s complaint occurred more than six years ago and respondent has had a clean record during that six year period.
Based on his findings of fact, recommendations of guilt, and findings as to aggravating and mitigating circumstances, the referee made the following recommendation as to discipline:
I recommend that as punishment for the violations herein enumerated, the respondent BARBARA L. WOLF be suspended from the practice of law in Florida for 24 months and thereafter until she shall (1) prove rehabilitation, (2) make restitution to Joseph Nemetz for the interest lost in his trust account during the period from August 24, 1984, to July 10, 1986, together with interest thereon at the legal rate to date of payment, (3) pass the ethics portion of the Florida examination for admission to the Florida Bar, and pay the costs of these proceedings to be hereafter assessed on further hearing before the referee.
Wolf contends that the referee failed to give sufficient weight to mitigating circumstances, that she never intended to deprive clients of funds, and that appropriate discipline would be a public reprimand, with monitoring of her accounts. The Bar, on the other hand, contends that the referee failed to give sufficient weight to aggravating circumstances, that the allegations in Count IV were sufficiently established, and that appropriate discipline is disbarment.
Upon review of the record, we conclude that the referee’s findings of fact and recommendations as to guilt are supported by competent substantial evidence. We find the recommended disciplinary measures appropriate in light of the aggravating and mitigating circumstances. Accordingly, we hereby suspend Barbara L. Wolf from the practice of law for twenty-four months and thereafter until: she proves rehabilitation; she makes restitution to Joseph Nemetz as stated in the referee’s report; and she passes the ethics portion of the Florida Bar Exam. This suspension shall begin thirty days after the filing of this opinion, thereby giving Wolf time to close out her practice and protect her clients’ interests. She shall accept no new business after the fil *465 ing of this opinion. Judgment for costs in the amount of $6,500.00 is entered for The Florida Bar against Barbara L. Wolf, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.

. The referee noted that "[a]s the violations respondent committed occurred prior to January 1, 1987, reference herein will be made to the Florida Bar Integration Rule and Code of Professional Responsibility."